UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
===========================X
MONROE S. WASCH,

    Plaintiff,

    -against-

TELE ATLAS and TELE ATLAS NORTH
AMERICA, INC.,

    Defendants.
===========================X

Judge Casey

05 CV 5075

COMPLAINT

Docket No.:

PLAINTIFF DEMANDS A
TRIAL BY JURY

    Plaintiff **MONROE S. WASCH**, by his attorneys **BENEDICT P. MORELLI & ASSOCIATES, P.C.**, complaining of the Defendant herein, upon information and belief respectfully alleges as follows:

    1.    At all times relevant herein, Plaintiff **MONROE S. WASCH** has been a resident of the City of New York, State of New York.

    2.    During the period from on or about June 9, 1997 until his wrongful termination on or about October 23, 2003, Plaintiff **MONROE S. WASCH** was employed by Defendant **TELE ATLAS NORTH AMERICA, INC.**, the wholly-owned subsidiary of Defendant **TELE ATLAS**.

    3.    From approximately June 9, 1997 until his wrongful termination on October 23, 2003, Plaintiff **MONROE S. WASCH** was employed by Defendant **TELE ATLAS NORTH AMERICA, INC.** in Manhattan, and reported to its headquarters in Menlo Park, California.

    4.    At all times hereinafter mentioned, Defendant **TELE ATLAS NORTH AMERICA, INC.** ("**TANA**") was the wholly-owned subsidiary of Defendant **TELE ATLAS**. Defendant **TANA** is a leading provider of digital map databases and associated navigation

products and enterprise and consumer services in North America.

5.     At all times hereinafter mentioned, Defendant **TANA** was and is a corporation duly organized and existing under and by virtue of the laws of the State of Delaware, with its principal place of business in the City of Menlo Park, State of California. Defendant **TANA** has offices throughout the United States, including the City of New York, State of New York, and regularly conducts business in New York, New York. Defendant **TANA** has approximately four hundred employees.

6.     At all times hereinafter mentioned, Defendant **TELE ATLAS** was and is the parent company of Defendant **TANA**. Defendant **TELE ATLAS** is a worldwide provider of digital maps and dynamic location content for a variety of navigation, location-based services and geospatial products and database solutions. **TELE ATLAS** provides digital maps and databases for In-Car Navigation Systems, Personal Navigation Systems, and Geographic Information Systems serving governments and utilities. **TELE ATLAS** employs approximately 1800 people worldwide.

7.     At all times hereinafter mentioned, Defendant **TELE ATLAS** was and is a corporation duly organized and existing under and by virtue of the laws of the Netherlands, with its principal place of business in Gent, Belgium.

8.     From approximately June 9, 1997 until approximately February 1998, Plaintiff **MONROE S. WASCH** worked as Account Executive for Defendant **TANA**.

9.     In approximately February 1998, Plaintiff **MONROE S. WASCH** was promoted to Eastern Regional Account Manager for Defendant **TANA**. Plaintiff served in that capacity until approximately September 2000.

10.    In approximately September 2000, Plaintiff **MONROE S. WASCH** was

promoted to Vice President, National Sales for Defendant **TANA**. Plaintiff's responsibilities included recruiting, hiring, training, supervising and, where necessary, firing **TANA**'s entire national sales force. Plaintiff served in that capacity until approximately April 2001.

11. In approximately April 2001, Plaintiff **MONROE S. WASCH** became Vice President, Traffic Sales Development for Defendant **TANA**. Plaintiff served as Vice President, Traffic Sales Development until his wrongful termination on or about October 23, 2003.

12. Commencing approximately June 1997 through approximately Summer 1998, Joe Petrucci was Vice President of Sales, a supervisor, manager and employee of Defendant **TANA**. From approximately June 1997 until approximately Summer 1998, Plaintiff **MONROE S. WASCH** reported directly to Joe Petrucci.

13. Throughout Plaintiff's employment from approximately June 1997 through approximately October 2003, Larry Sweeney was Vice President of Business Development, a supervisor, manager and employee of Defendant **TANA**. From approximately January 1999 until approximately April 2001, Plaintiff **MONROE S. WASCH** reported directly to Larry Sweeney.

14. Throughout Plaintiff's employment from approximately June 1997 through approximately October 2003, Robert Miller was Senior Vice President of Sales & Marketing, a supervisor, manager and employee of Defendant **TANA**. From approximately April 2001 until approximately March 2003, Plaintiff **MONROE S. WASCH** reported directly to Robert Miller. In approximately August 2003, when Robert Miller was approximately 60-years-old, Defendant **TANA** terminated Robert Miller's employment.

15. Commencing approximately March 2003 through approximately October 2003, Richard Pearlman was Vice President, Navigation, a supervisor, manager and employee of Defendant **TANA**. From approximately March 2003 to approximately October 23, 2003,

Plaintiff **MONROE S. WASCH** reported directly to Richard Pearlman.

16.  Commencing approximately Summer 2003 through approximately October 23, 2003, George Fink was Chief Operating Officer, a supervisor, manager and employee of Defendant **TANA**. During that same period of time, Vice President Richard Pearlman reported directly to Chief Operating Officer George Fink.

17.  At all times material to this Complaint, the individual officers, directors, supervisors, managers, employees and/or agents mentioned herein, acted within the scope of their duties as officers, directors, supervisors, managers, employees and/or agents of Defendants **TANA** and **TELE ATLAS** (hereinafter, these Defendants shall be collectively referred to as "Defendants **TANA**.")

18.  Jurisdiction of the subject matter of this action is established in this Court under The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Section 621, et seq, in that unlawful acts alleged herein were committed within this Court's jurisdiction.

19.  On or about August 13, 2004, Plaintiff **MONROE S. WASCH** filed a discrimination claim with the New York State Division of Human Rights and the EEOC.

20.  On or about April 11, 2005, the EEOC issued a Notice of Right to Sue on Plaintiff's behalf.

### SPECIFIC ALLEGATIONS OF AGE DISCRIMINATION

21.  Plaintiff **MONROE S. WASCH** was born on October 27, 1941 and is presently 63-years-old.

22.  During his employment with Defendants **TANA**, Plaintiff **MONROE S. WASCH** was treated differently than younger employees at the company.

23. This disparate treatment included different standards of conduct, unequal work assignments and unequal opportunities directed toward himself and other older employees as opposed to employees under the age of 40 who were similarly employed by and situated at Defendants **TANA**.

24. During Plaintiff's employment, there existed at Defendants **TANA** an ongoing and pervasive corporate culture that favored youthful employees and disfavored older employees, and manifested in discriminatory conduct against older employees.

25. The discrimination at Defendants **TANA** against older employees adversely affected the terms and conditions of Plaintiff's employment, and culminated in Plaintiff **MONROE S. WASCH**'s unlawful termination.

26. During Plaintiff **MONROE S. WASCH**'s employment, from approximately January 2003 through his termination, Richard Pearlman, George Fink and other executives, officers, managers and supervisors created and maintained a hostile work environment through explicit, rampant, pervasive and continued age discrimination against Plaintiff and other older employees in the office. Under their direction, Defendants **TANA** became an exclusive club where younger people were promoted and older executives were isolated, rendered impotent or terminated.

27. Throughout his employment at Defendants **TANA**, Plaintiff **MONROE S. WASCH** routinely received written performance appraisals reporting that his work "far exceeds requirements," "exceeds requirements" and/or "meets all requirements." Plaintiff never received a negative performance appraisal.

28. On or about July 1, 1998, Vice President Joe Petrucci reported in Plaintiff's annual Performance Appraisal that Plaintiff **MONROE S. WASCH**'s "quality of work," "knowledge of

job," "planning & organizing," "dependability," "judgment," "initiative," "creativity," "teamwork," and "quota attainment" all "far exceeds requirements." Vice President Petrucci reported that **MONROE S. WASCH** "has done an excellent overall job keeping Etak alive in the marketplace while we work out internal Etak and product issues. Employee is very valuable with vast knowledge associated with licensing in related industries," and concluded: "[MONROE S. WASCH] is doing a fine job with existing and relevant responsibilities."

29. On or about July 19, 2002, Vice President Larry Sweeney reported in the annual Performance Appraisal that the result Plaintiff **MONROE S. WASCH** obtained for his single most critical work objective "far exceeds requirements." Vice President Larry Sweeney concluded: "He has been effective in improving **TANA**'s relationship with SRS sales personnel, and in increasing traffic sales during the past year. The business strategy, terms, and pricing that he has jointly developed with Westwood One appears to be working...."

30. On numerous occasions throughout his employment, Plaintiff **MONROE S. WASCH** received verbal commendations from Chief Operating Officer George Fink, Senior Vice President Robert Miller, Vice President Larry Sweeney and others.

31. For each year of his employment with Defendants **TANA** from approximately 1997 through approximately 2003, **MONROE S. WASCH** was the company's top Sales Associate.

32. During his last year of employment ending in October 2003, Plaintiff **MONROE S. WASCH** was responsible for approximately $1.3 - $1.5 million in sales, approximately 25% of **TANA**'s total sales that year.

33. During his employment with Defendants **TANA**, Plaintiff **MONROE S. WASCH** was responsible for training the company's entire North American sales force.

34. During the course of his employment from June 1997 through October 2003, Plaintiff **MONROE S. WASCH** represented Defendants **TANA** at approximately 25 trade shows and conferences, and spoke on behalf of Defendants **TANA** at numerous professional conferences.

35. During the course of his employment from approximately June 1997 through October 2003, Plaintiff **MONROE S. WASCH** earned three merit raises.

36. Nevertheless, commencing approximately March 2003 and continuing over the next several months, Vice President Richard Pearlman increasingly removed Plaintiff's responsibilities pertaining to certain sales accounts and disrupted the relationships Plaintiff **MONROE S. WASCH** had established with numerous outside partners.

37. Commencing approximately March 2003, Vice President Richard Pearlman reassigned Plaintiff **MONROE S. WASCH**'s sales accounts to a significantly younger, inexperienced Sales Associate, David Nevin.

38. Commencing approximately March 2003, Vice President Richard Pearlman reassigned Plaintiff **MONROE S. WASCH**'s business development responsibilities to a significantly younger, inexperienced Marketing Manager, Robert Hylkema.

39. On or about August 2003, Defendants **TANA** terminated approximately 69 employees. Of the 69 employees terminated, over 40% (approximately 28 out of 69 employees) were 40-years-old are older.

40. On or about August 2003, approximately 30 of the 69 employees terminated by Defendants **TANA** held executive positions, namely the: Associate Counsel; Chief Financial Officer; Contracts Manager; Controller; Data Production Supervisor; Database Manager; Database Product Manager; Director DTC Prod. Development; Director LBS Markets; Director

of Data Collection; Director of Human Resources; Director of Navigation; Director Sales Development; Director Strategic Partnership; Director, Engineering; Director, Professional Services; Engineering Manager; Executive Account Director; Executive Account Manager; Executive Account Manager-Fleet & Logistics; Executive Account Manager-GIS; Executive Account Manager-PNV; Vice President/General Counsel; Vice President/General Manager; Vice President, Patents and Licensing; Vice President, Product Management & Engineering; Vice President, Sales - GIS/LBS; Vice President, Sales - Navigation/Telematics; and Vice President/General Manager Dynamic Traveler Content.

41. In approximately August 2003, two-thirds of the 30 executives terminated by Defendants **TANA** (i.e., 20 out of 30 executives, or 67%) were 40-years-old or older.

42. In approximately August 2003, the average age of the executives terminated by Defendants **TANA** was 45-years-old.

43. In approximately August 2003, seven of the employees terminated by Defendants **TANA** were Vice Presidents. Of those seven Vice Presidents, 86% (six out of seven Vice Presidents) were 40-years-old or older.

44. In approximately August 2003, the seven Vice Presidents terminated by Defendants **TANA** were then the following ages: Vice President, Patents and Licensing - 75-years-old; Vice President/General Manager Dynamic Traveler Content - 61-years-old; Vice President/General Manager - 51-years-old; Vice President, Sales - GIS/LBS - 44-years-old; Vice President, Sales - Navigation/Telematics - 44-years-old; Vice President General Counsel - 43-years-old; and Vice President, Product Management & Engineering - 39-years-old.

45. In approximately August 2003, the average age of the Vice Presidents terminated by Defendants **TANA** was 51-years-old. In approximately August 2003, the only Vice President

terminated by Defendants **TANA** under the age of 40 was 39-years-old.

46.     On or about October 21, 2003, Plaintiff **MONROE S. WASCH** was summoned to a meeting with Senior Vice President Richard Pearlman and Human Resources Manager Sandra Fung-Mack. During the course of their meeting, Vice President Richard Pearlman told Plaintiff **MONROE S. WASCH**: "the company's business plan has changed, and there's not enough revenue to support your continued employment." Vice President Richard Pearlman further informed Plaintiff **MONROE S. WASCH** that the company "needed to move forward" and that his position was therefore being eliminated effective October 23, 2003. Plaintiff **MONROE S. WASCH** received no warning prior to that conversation nor was he given a legitimate business reason for his firing.

47.     During the course of this meeting on or about October 21, 2003, Vice President Richard Pearlman informed Plaintiff **MONROE S. WASCH** that his services were no longer required because Defendants **TANA** were "moving in a new direction," and "looking to attract more customers from the wireless communications market." The wireless communications market is commonly perceived as a youth-oriented, youth-driven market.

48.     During the course of this meeting on or about October 21, 2003, Vice President Richard Pearlman explained that David Nevin had more experience in the wireless communications market and was therefore a better fit for Defendants **TANA**. Plaintiff **MONROE S. WASCH** expressed bewilderment, since many of his customers at the time (including Motorola, Microsoft and OnStar) were very active in the wireless communications market, whereas David Nevin had no experience in that area. Prior to coming to Defendants **TANA**, David Nevin had worked for AutoDesk, a manufacturer of engineering design software.

49.     On or about October 23, 2003,despite his superior experience and valuable

contribution to the company, Defendants **TANA** unlawfully terminated Plaintiff **MONROE S. WASCH**'s employment.

50. On or about October 23, 2003, Plaintiff **MONROE S. WASCH** was replaced by David Nevin, then approximately 35-years-old and some 26-years-younger than Plaintiff. At the time, David Nevin had significantly less experience than Plaintiff **MONROE S. WASCH**. Indeed, David Nevin had only worked for Defendants **TANA** approximately six months, and was trained by Plaintiff **MONROE S. WASCH**.

51. Prior to his forced departure from the company in October 2003, Plaintiff **MONROE S. WASCH** was instructed to surrender all of his accounts to David Nevin. David Nevin was then handed Plaintiff's responsibilities even though David Nevin lacked nearly enough training to perform those responsibilities.

52. In addition, prior to his departure in October 2003, Plaintiff **MONROE S. WASCH** was required to transfer information on his accounts and activities to a second employee, Robert J. Hylkema, who was also approximately in his '30s. Again, Robert Hylkema had significantly less experience than Plaintiff, and Plaintiff had trained Robert Hylkema in the areas of his responsibilities.

53. From on or about October 2003 through the present, Defendants **TANA** have never offered Plaintiff **MONROE S. WASCH** an alternative position with the company, even though Plaintiff was fully qualified for any other sales position at Defendants **TANA**, had successfully held the position as top Sales Representative throughout his tenure with Defendants **TANA**, and had specifically asked for any other position within the company at the time of his unlawful termination.

## AS AND FOR A FIRST CAUSE OF ACTION

## ADEA - AGE DISCRIMINATION

54. Plaintiff **MONROE S. WASCH** repeats and realleges each and every allegation contained in paragraphs 1 through 53 inclusive, with the same force and effect as though more fully set forth at length herein.

55. The aforesaid acts by Defendants **TANA** and **TELE ATLAS**, its officers, directors, supervisors, managers and/or employees, violated Plaintiff **MONROE S. WASCH**'s rights as provided under The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Section 621, et. seq.

56. As a consequence of the foregoing misconduct of Defendants **TANA** and **TELE ATLAS**, Plaintiff **MONROE S. WASCH** sustained conscious pain and suffering, great mental distress, and humiliation, and incurred economic loss.

57. As a consequence of the foregoing misconduct of Defendants **TANA** and **TELE ATLAS**, Plaintiff **MONROE S. WASCH** has been damaged and is entitled to compensatory damages and punitive damages in the sum prescribed by 29 U.S.C. Section 626(b) and 216(b), i.e., THREE HUNDRED THOUSAND ($300,000.00) DOLLARS.

## AS AND FOR A SECOND CAUSE OF ACTION
## NYSHRL - AGE DISCRIMINATION

58. Plaintiff **MONROE S. WASCH** repeats and realleges each and every allegation contained in paragraphs 1 through 53 inclusive, with the same force and effect as though more fully set forth at length herein.

59. The aforesaid discriminatory acts by Defendants **TANA** and **TELE ATLAS**, its officers, directors, supervisors, managers and/or employees, perpetrated against

Plaintiff **MONROE S. WASCH** because of his age, violated Plaintiff **MONROE S. WASCH**'s rights as provided under The New York State Human Rights Law, Article 15 of the New York Executive Law ("NYSHRL"), 15 N.Y. Exec. Law Section 290, et. seq.

60. As a consequence of the foregoing misconduct of Defendants **TANA** and **TELE ATLAS**, Plaintiff **MONROE S. WASCH** sustained conscious pain and suffering, great mental distress, and humiliation, and incurred economic loss.

61. As a consequence of the foregoing misconduct of Defendants **TANA** and **TELE ATLAS**, Plaintiff **MONROE S. WASCH** has been damaged and is entitled to compensatory damages as provided under 15 N.Y. Exec. Law Section 297(4)(c) in the amount of TEN MILLION ($10,000,000.00) DOLLARS.

WHEREFORE, Plaintiff **MONROE S. WASCH** demands judgment against Defendants **TANA** and **TELE ATLAS** in the First Cause of Action in the amount of THREE HUNDRED THOUSAND ($300,000.00) DOLLARS; and Plaintiff **MONROE S. WASCH** demands judgment against Defendants **TANA** and **TELE ATLAS** in the Second Cause of Action in the amount of TEN MILLION DOLLARS ($10,000,000.00), all together with the costs and disbursements of this action, including attorneys' fees, plus interest, and for any other relief which this Court deems just and proper.

Dated:    New York, New York
          May 23, 2005

                              BENEDICT P. MORELLI & ASSOCIATES, P.C.

                              By: _____
                                  Martha M. McBrayer, Esq. (MM-7097)
                                  950 Third Avenue, 11th Floor
                                  New York, New York 10022
                                  (212) 751-9800